UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| STEVEN J. CUMMINGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:15-cv-00123-TWP-DML |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS**

This matter is before the Court on a Motion for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) by Defendant United States of America ("the Government"). (Filing No. 40.) Plaintiff Steven J. Cummings ("Cummings") accrued approximately $125,000.00 in unpaid tax liabilities. The Government ultimately issued several levies on Cummings' wages and Thrift Savings Plan ("TSP"), through which it collected funds owed. Cummings alleges that those levies were issued in violation of a statute prohibiting the collection of funds via levy while the taxpayer has an Installment Agreement Request ("IAR") or Offer in Compromise ("OIC") pending with the Internal Revenue Service ("IRS"). Cummings sues for damages, and the Government has filed the instant 12(c) motion, arguing that Cummings did not have an IAR or OIC pending with the IRS at the time that his funds were levied. For the reasons discussed below, the Court **GRANTS** in part and **DENIES** in part the Government's motion.

**I. BACKGROUND**

The following facts are not necessarily objectively true; but, as required when reviewing a motion for judgment on the pleadings, the Court accepts as true all factual allegations in the

Amended Complaint and draws all inferences in favor of Cummings.  *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Cummings accumulated a variety of tax liabilities and civil penalties amounting to approximately $125,000.00 related to payroll taxes in both his individual and business capacities. (Filing No. 22 at 2.)  IRS revenue officer Michael Ripley ("Ripley") was assigned to Cummings' case and began his analysis of Cummings' accrued liabilities in June 2012.  (Filing No. 41 at 5.) Prior to June 2012, the IRS had been collecting 15% of Cummings' wages from his employer, the Defense Finance and Accounting Service ("DFAS") under the Federal Payment Levy Program. (Filing No. 41 at 5.)  On July 30, 2012, Ripley issued a Notice of Wage Levy to DFAS, but DFAS did not comply with the Levy.  (Filing No. 41 at 5.)  Ripley issued a second Notice on January 18, 2013, and DFAS did not comply with this Levy either.  (Filing No. 41 at 5.)  As a result, the IRS did not receive any payments after May 10, 2013.  (Filing No. 41 at 8.)

Cummings received a summons to appear at Ripley's Bloomington, Indiana office on February 26, 2013.  (Filing No. 22 at 2.)  Cummings and his attorney waited for several hours, but Ripley did not appear for the appointment.  (Filing No. 22 at 2-3.)  On March 23, 2013, Cummings sent by Certified U.S. Mail an Installment Agreement Request to Ripley at his Bloomington office. (Filing No. 22 at 3.)  Cummings made his request on IRS form 433-D, and he attached a completed financial information statement on IRS Form 433-A.  (Filing No. 22 at 3.)  The package's tracking information indicated that the request was delivered to the Ripley's office on March 25, 2013. (Filing No. 22 at 3.)[1]

---

[1] The Court notes that the Government asserts in its Answer that Ripley never received the subject mailing and has no knowledge of what it contained.  (Filing No. 26 at 4-5.)  As required at this stage, the Court accepts Cummings' factual allegations as true.

2

On May 6 and July 16, 2013, Cummings' counsel faxed correspondence to Ripley inquiring about the status of Cummings' IAR. (Filing No. 22 at 3.) Neither Cummings nor his counsel received any response. (Filing No. 22 at 3.) On August 29, 2013, Cummings' counsel left a voicemail message for Ripley inquiring about the status of Cummings' request, and again, he did not receive a response. (Filing No. 22 at 3-4.)

On September 3, 2013, Ripley discovered that no wage levy payments had been received on Cummings' liability since May. (Filing No. 41 at 8.) On that same day, Ripley contacted DFAS to inquire as to why it had not complied with the levies, and DFAS responded that it had overlooked them. (Filing No. 41 at 8.) Ripley sent another Notice of Levy in early September 2013. (Filing No. 41 at 8.) On or about October 31, 2013, DFAS sent Cummings a letter indicating that the employer had received a Levy Notice from the IRS. (Filing No. 22 at 4.) Cummings received the letter on or around November 4, 2013, and this was his first notice that a wage levy had been issued. (Filing No. 22 at 4.) At the time that Cummings received the Notice, he had not been informed that his IAR had been rejected. (Filing No. 22 at 4.) DFAS began withholdings from Cummings' paycheck on December 6, 2013. (Filing No. 41 at 8.) That levy continued until it was released on June 17, 2015. (Filing No. 22 at 5.)

On November 6, 2013, Cummings' counsel requested assistance from the IRS Taxpayer Assistance Service, and on December 10, 2013, the Taxpayer Assistance Service submitted another IAR on Cummings' behalf to Ripley. (Filing No. 22 at 4.) On December 10, 2013, Ripley informed Cummings' counsel that he recommended the rejection of Cummings' IAR on the basis that Cummings could afford a higher payment. (Filing No. 22 at 4.) On February 26, 2014, Cummings' counsel appealed the installment agreement rejection through the Collective Appeals Program and requested a return of the wages that had been levied from Cummings. (Filing No. 22

3

at 5.) On March 7, 2014, the IRS issued a determination letter sustaining the installment agreement rejection. (Filing No. 22 at 5.)

At some point, Cummings (or the Taxpayer Assistance Service) drafted the OIC in which he offered to pay a $15,000.00 lump-sum payment in full satisfaction of his roughly $125,000.00 tax liability. (Filing No. 41 at 10.) On March 10, 2015, the Taxpayer Assistance Service issued a Taxpayer Assistance Order ("TAO"), which ordered the IRS to consider Cummings' OIC, which was attached to the TAO. (Filing No. 22 at 5.) The TAO also ordered the IRS to apply funds that had been "wrongfully" levied from Cummings' wages to the application fee and initial payment of the OIC. (Filing No. 22 at 5.)

By letter dated April 9, 2015, the Deputy Commissioner for Services and Enforcement rescinded the TAO issued by Taxpayer Assistance Service. (Filing No. 26-7.) The letter explained that Cummings had failed to send his OIC to the Brookhaven Service Center, where it would be determined whether the offer qualified to be accepted for processing. (Filing No. 26-7 at 2.) It also stated that Cummings failed to include a check for the application fee and the statutorily required twenty percent down-payment when offering a lump sum OIC. (Filing No. 26-7 at 2.) For these reasons, "a processability determination has not been made." (Filing No. 26-7 at 2.)

On April 13, 2015, Ripley issued a Notice of Levy addressed to the administrator of Cummings' TSP account. (Filing No. 22 at 6; Filing No. 41 at 10.) On April 28, 2015, the IRS Centralized OIC Unit ("COIC") informed Cummings that his OIC was being returned as non-processable, because Cummings did not submit the application fee and initial payment. (Filing No. 41 at 11.) On April 29, 2015, Cummings' counsel appealed the TSP levy, and the levy was sustained in full on May 13, 2015. (Filing No. 22 at 6.) Shortly after May 13, 2015, approximately

4

$60,000.00 was removed pursuant to the IRS levy from Cummings' TSP account. (Filing No. 22 at 6.)

Cummings filed suit in this Court, alleging that the IRS levied his wages and TSP account in violation of 26 U.S.C. § 633(k). (Filing No. 1.) After filing an Answer to the Complaint, (Filing No. 26), the IRS moved to dismiss Cummings' claim pursuant to Fed. R. Civ. P. 12(c), (Filing No. 40). Cummings opposes that motion. (Filing No. 45.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer. Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir. 1996). The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.* Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (*quoting Craigs, Inc. v. Gen. Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir. 1993)). The factual allegations

5

in the complaint are viewed in a light most favorable to the non-moving party; however, the Court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (*quoting R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.,* 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone.... The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

### III. DISCUSSION

#### A. Legal Framework: Relevant Tax Code Provisions

The Government may not be sued without its consent, and waivers to its sovereign immunity are both not implied and are construed narrowly against a plaintiff. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013) (citing *Soriano v. United States,* 352 U.S. 270, 276 (1957)). Section 7433 provides such a waiver. *Id.* That provision authorizes a taxpayer to seek damages through a civil action against the United States when "in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title…." 26 U.S.C. § 7433.

Tax Code provision 26 U.S.C. § 6331(a) authorizes the IRS to collect unpaid tax liabilities through the issuance of a levy:

> upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person …. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official.

26 U.S.C. § 6331(a). Subsection (k) of that provision specifies that, however, under certain circumstances, a levy may not properly be issued. That subsection provides as follows:

6

> **(k) No levy while certain offers pending or installment agreement pending or in effect.**
>> **(1) Offer-in-compromise pending.**--No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax(:)
>>> **(A)** during the period that an *offer-in-compromise by such person under section 7122 of such unpaid tax is pending* with the Secretary;
>>> ….
>>> For purposes of subparagraph (A), an offer is *pending beginning on the date the Secretary accepts such offer for processing*.
>> **(2) Installment agreements.**--No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax(:)
>>> **(A)** during the period that an *offer by such person for an installment agreement under section 6159 for payment of such unpaid tax is pending* with the Secretary…

26 U.S.C. § 6331(k) (emphasis added).

The dispute in this case centers on whether Cummings had an IAR or OIC "pending" with the Secretary at the time that the IRS issued levies against Cummings' wages and TSP account. The Government argues that, based on the applicable regulations, neither Cummings' IAR nor his OIC were "pending" with the Secretary at the time that the levies were issued. Cummings argues that they were.

**B.     Installment Agreement Request (IAR)**

Treasury regulation 26 C.F.R. § 301.6159-1 provides that:

> **(b) Procedures for submission and consideration of proposed installment agreements—**
>> **(1) In general.** A proposed installment agreement must be submitted *according to the procedures, and in the form and manner, prescribed by the Commissioner*.
>> **(2) When a proposed installment agreement becomes pending.** A proposed installment agreement becomes pending when it is *accepted for processing*. … The proposed installment agreement remains pending until the IRS accepts the proposal, the IRS notifies the taxpayer that the proposal has been rejected, or the proposal is withdrawn by the taxpayer.

7

26 C.F.R. § 301.6159-1 (emphasis added). In addition, the IRS's Internal Review Manual, which is the reference for internal procedures that IRS employees are instructed to follow, states that in order to identify an account as having a pending IAR in the IRS's Integrated Data Retrieval System, taxpayers must: (a) "[p]rovide information sufficient to identify the taxpayer: generally, the taxpayer's name and taxpayer identification number (TIN);" (b) "[i]dentify the tax liability to be covered by the agreement;" (c) "[p]ropose a monthly or other periodic payment of a *specific* amount;" and (d) "[b]e in compliance with filing requirements." I.R.M. § 5.14.1.3(4) (emphasis in original). IRS employees are instructed that, upon receiving information satisfying these four requirements, they must input a transaction code indicating that an IAR is "pending" within twenty-four hours. I.R.M. § 5.14.1.3.

1. **Definition of "Accepted for Processing"**

Regulation 26 C.F.R. § 301.6159-1 defines a pending proposed installment agreement as one that has been accepted for processing. The Government contends that the mere receipt of a request does not constitute it being accepted for processing, (Filing No. 41 at 18), while Cummings argues that a proposed installment agreement is accepted for processing when it is received by the IRS (Filing No. 45 at 13).

As noted by the district court in *Gessert v. United States*, "[j]ust when a proposed installment payment agreement is accepted for processing (and therefore is pending, thereby suspending collection activity) is left curiously vague." *Gessert v. United States*, 627 F. Supp. 2d 942, 951-52 (E.D. Wis. 2009), *aff'd*, 703 F.3d 1028 (7th Cir. 2013). In that case, when Gessert requested an installment plan, the revenue officer notified him that she could not evaluate his request "until he provided current corporate and personal financial statements and unfiled returns." *Gessert,* 627 F.Supp. 2d at 951. She asked him to submit the required information by a specific

date, which he failed to do. *Id.* Under those circumstances, the court concluded that the IRS "never accepted the Corporation's proposal for processing." In other words, the mere receipt of the plaintiff's request was not sufficient—Gessert was required to meet other substantive requirements before his request could be considered accepted for processing, and therefore pending. *Id.* (concluding that the Internal Review Manual "further makes clear that a request for an installment agreement alone does not cause an agreement to be pending; rather, the request must be accepted for processing.") (citing I.R.M. § 5.14.1.3(4)).

The same reasoning applies here, and the Court agrees with the *Gessert* court that the mere receipt of a request for an installment agreement does not constitute it being accepted for processing and therefore pending. Whether the IAR tendered by Cummings was accepted for processing will addressed in subsequent sections of this entry.

### 2. **Procedures, Form, and Manner**

The Government argues that Cummings submitted his IAR on the wrong form and to the wrong office. These errors, the IRS contends, rendered the request non-processable, and therefore never accepted for processing or pending. According to Cummings' Amended Complaint, he submitted his IAR on IRS Form 433-D. However, according to the Government, the proper form is Form 9465. As indicated on the Form 9465, proposed installment agreements must be sent to a specific post office box at one of two IRS locations—in Cummings' case, the Memphis Service Center. The Government contends that it has promulgated these particular procedures, forms, and manner requirements in order to ensure that installment agreements are efficiently accepted for processing, and so that the requests are properly processed.

Cummings responds that there is no legal requirement that a taxpayer use any particular form to propose an installment agreement, and that once a case has been assigned to a revenue

9

officer, it is well understood that all communications should be directed to the revenue officer handling the case. (Filing No. 45 at 18.)

The Court cannot conclude that Cummings was required to submit his IAR on an IRS Form 9465 to the Memphis Service Center, and therefore the Court cannot find that the failure to do so automatically rendered Cummings' application non-processable. First, the Seventh Circuit has already noted that it "can find no requirement that a taxpayer's initial request for an installment agreement also be in writing." *Seagrave v. United States*, 221 F. App'x 457, 459 (7th Cir. 2007) (citing http://www.irs.gov/ faqs/faq-kw93.html (last visited March 20, 2007) (informing taxpayers who owe money that they may use form or call toll-free number to request installment agreement))."[2] Second, the Internal Review Manual's language confirms that a taxpayer can request an installment agreement in a variety of ways: "[p]roposals to enter into installment agreements may result from letters, phone contacts, voice-mail, e-mail, or other communications between taxpayers and Service personnel…" I.R.M. § 5.14.1.3. Based on these protocols, both internal and external to the IRS, the Court cannot conclude that Cummings' installment agreement request was automatically non-processable based on the procedure, form, or manner of submission.

### 3. "Pending" Notation in IRS Database

The Government also contends that the "sole method for determining whether there was an installment agreement pending" is to examine whether the appropriate "pending" Transaction and Action Codes were input into the Integrated Data Retrieval System. (Filing No. 41 at 16.) The Government argues that if those codes are not present, then there was no pending installment agreement. (Filing No. 41 at 16.) The Government further contends that Cummings has failed to

---

[2] The current version of the IRS website similarly notes several ways in which a taxpayer can apply for an installment agreement, including by telephone and in person at an IRS walk-in office. *See* https://www.irs.gov/individuals/payment-plans-installment-agreements (last accessed March 21, 2017).

plead the factual allegation that his account ever reflected the applicable "pending" Transaction and Action Codes—information which he could have discovered by filing a Form 4506-T. (Filing No. 41 at 16.) Cummings argues that the presence or absence of the codes cannot be dispositive, because, at a minimum, reliance on the codes alone would fail to account for possible errors on the part of IRS employees. (Filing No. 45 at 15.)

The Court agrees with Cummings. While the Transaction and Action Codes can provide evidence for or against the conclusion that an IAR was pending, the Court cannot conclude that the presence or absence of a code is dispositive. Cummings' argument regarding employee error is well-taken, and indeed, the Government has acknowledged that a number of errors occurred in Cummings' case, including: that Ripley failed to calendar a meeting with Cummings, and therefore missed the meeting, (Filing No. 26 at 4); that a mailing from Cummings was delivered to the IRS office in Bloomington, but it was never received by Ripley or his supervisor, (Filing No. 26 at 5); and that some sort of status code error occurred regarding wage levies and closure occurred within the automated system, (Filing No. 26 at 10).[3]  The Court cannot conclude that the codes input by the IRS dictate whether an installment agreement request is "pending" as defined by statute and regulation.

4. **Eligibility for Installment Request**

The Government argues that, even if Cummings' IAR had been received by Ripley or the correct IRS processing center, it was "forbidden from being accepted for processing" because Cummings was not eligible for an installment agreement. (Filing No. 41 at 16.) The Government contends that Cummings was not in compliance with his current tax filing obligations, as he was required to be in order to be eligible for an installment agreement. (Filing No. 41 at 17.) Therefore,

---

[3] *See also, Eichler v. C.I.R.*, 143 T.C. 30, 33 (2014) (IRS Collection Division failed to input appropriate IAR codes within required 24-hour timeframe.)

his request would not have been accepted for processing, even if received. (Filing No. 41 at 17.) Cummings concedes that at the time of his initial installment request, he was not current on his tax filing obligations. (Filing No. 45 at 15.) But, he argues, neither the statute nor accompanying regulations condition the filing of an IAR on compliance with tax filing requirements. (Filing No. 45 at 11.) Only the Internal Review Manual imposes such a requirement, and Cummings urges the Court to find the Internal Review Manual unpersuasive in this instance. (Filing No. 45 at 11.)

The Government concedes that the statute and regulations do not compel the IRS to return an IAR as non-processable if the taxpayer is not compliant with his current tax obligations, and that the decision to do so is discretionary. (Filing No. 47 at 6.) Therefore, at the motion for judgment on the pleadings stage, the Court cannot conclude that Cummings' IAR was guaranteed to be returned as non-processable, and that, as a matter of or law or indisputable fact, it would never have been accepted for processing or pending. At a later stage, the Government might conclusively establish that Cummings' IAR would certainly have been rejected as non-processable, but at this stage of the proceedings, the Court cannot conclude that the facts as alleged by Cummings, dictated that result. This outcome is fully consistent with *Boulware v. C.I.R. Service*, 816 F.3d 133, 135 (D.C. Cir. 2016), in which the court concluded that an IRS settlement officer did not abuse her discretion in denying an request for an installment agreement when the taxpayer was not in compliance with his current tax obligations.[4] While it is true that *Boulware* involved the rejection (on the merits) of a taxpayer's IAR, not a question of whether the IAR was pending, the Court notes that the IAR must have been accepted for processing in order for it to have been considered on the merits by the settlement officer.

---

[4] The Court also notes that in that case, Mr. Boulware appears to have requested an installment agreement by letter, not using Form 9465. *See Boulware v. C.I.R.,* 2014 WL 1796342 at *5-6 (T.C. 2014).

For the reasons described above, the Court cannot conclude that it is "beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Outdoor Shows,* 163 F.3d at 452. Given the IRS's discretion in the procedure, form, and manner of submission, as well as in determining an applicant's eligibility, and viewing the facts in the light most favorable to Cummings, his Amended Complaint on this issue survives the motion for judgment on the pleadings.

5.  **Issues Raised on Reply**

On reply, the Government argues that Cummings' complaint should be dismissed for a number of other reasons, including (1) the narrow waiver of sovereign immunity conferred by 26 U.S.C. § 7433; (2) the requirement that actionable conduct must be committed by an IRS "employee," and not the organization as a whole; and (3) the IRS could not have been on notice that any allegedly offending conduct was actionable in this instance. (Filing No. 47 at 16.) It is well settled in the Seventh Circuit that arguments raised for the first time in reply brief are waived. *River v. Commercial Life Ins. Co.*, 160 F.3d 1164 (1998). Therefore, the Court will not address those arguments here.

C.  **Offer in Compromise**

The regulations and guidance regarding offers in compromise are more extensive than those governing IARs. 26 U.S.C. § 7122 authorizes the Secretary to accept to compromise (or settle for a lesser amount) a taxpayer's debt under certain prescribed circumstances. *See* 26 U.S.C. § 7122. As with IARs, 26 U.S.C. § 6331(k)(1) provides that levies may not be issued while an OIC is pending with the Secretary. The statute also specifies that "an offer is pending beginning on the date the Secretary accepts such offer for processing." 26 U.S.C. § 6331(k)(1).

Treasury Regulation 26 C.F.R. § 301.7122-1 specifies that an OIC becomes pending when it is "accepted for processing." 26 C.F.R. § 301.7122-1(d)(2). Revenue Procedure 2003-71 adds that:

> [t]he Service accepts an offer to compromise for processing when it determines that: the offer is submitted on the proper version of Form 656 and Form 433-A or B, as appropriate; the taxpayer is not in bankruptcy; the taxpayer has complied with all filing and payment requirements listed in the instructions to Form 656; the taxpayer as enclosed the application fee, if required; and the offer meets any other minimum requirements established by the Service.

Rev. Proc. 2003-71 § 5.01. In addition, "[a] determination is made to accept an offer to compromise for processing when a Service official with delegated authority to accept an offer for processing signs the Form 656. The date the Service official signs the Form 656 is recorded on the Service's computers." Rev. Proc. 2003-71 § 5.02. And, finally:

> [i]f the Service determines that an offer to compromise a liability does not meet the minimum requirements the Service has established for a processable offer, the offer to compromise is not processable and may be returned to the taxpayer. Because the offer to compromise was never accepted for processing, it was never pending and levy was never prohibited.

Rev. Proc. 2003-71 § 5.02.

Section 7122 specifies that when a taxpayer makes a "lump-sum payment" offer (an offer of payments made in five or fewer installments), the OIC "shall be accompanied by the payment of 20 percent of the amount of such offer." 26 U.S.C. § 7122(c)(1)(A)(i). Section 7122(d)(3)(C) provides that any OIC which does not meet the 20% payment requirement "may be returned to the taxpayer as unprocessable." 26 U.S.C. § 7122(d)(3)(C). Under treasury regulation 26 C.F.R. § 301.7122-1, an OIC must "be made in writing, must be signed by the taxpayer under penalty of perjury, and must contain all of the information prescribed or requested by the Secretary." 26 C.F.R. § 301.7122-1(d)(1). Revenue Procedure 2003-71 specifies that the offer must be made on IRS Form 656, and that none of the form's standard terms may be stricken or altered. Rev. Proc.

2003-71 § 4.01. The Revenue Procedure also indicates that the OIC should be mailed to the appropriate address listed on Form 656. Rev. Proc. 2003-71 § 4.04. It also indicates that the IRS "may, in its discretion, receive offers to compromise in other manners." Rev. Proc. 2003-71 § 4.04.

The Government argues that Cummings' OIC was never accepted for processing, and therefore never pending, for three reasons: (1) the offer was not submitted to the designated location for a processability determination; (2) the offer did not include the required $186.00 application fee; and (3) the offer did not include a twenty percent payment in the amount of $3,000.00. (Filing No. 41 at 25-26.) Cummings responds that the Revenue Procedure's definition of "accepted for processing" is contrary to the plain language of that phrase, as described in Treasury Regulation 26 C.F.R. § 301.7122-1. (Filing No. 45 at 22.) He urges the Court to adopt his "plain meaning" interpretation of the term "accepted for processing," as meaning "to take or receive something offered for the action of going forward or on." (Filing No. 45 at 21.) Cummings also argues that the fact that his OIC was filed in conjunction with a Taxpayer Assistance Order brought it into compliance with all filing requirements. (Filing No. 45 at 25.)

Here, a brief review of the timeline of events is helpful. On March 10, 2015, the National Taxpayer Advocate submitted Cummings' OIC as an attachment to a Taxpayer Assistance Order. (Filing No. 22 at 5.) The TAO was submitted to the office of the IRS Deputy Commissioner for Services and Enforcement. (Filing No. 47 at 12.) Cummings does not allege that he sent the OIC to the COIC or to Ripley. On April 9, 2015, the Deputy Commissioner rescinded the TAO that was issued on March 11, 2015, stating that, as relevant here, "[a]lthough the taxpayer submitted a form 656 to Taxpayer Assistance Service, the form has not been received by COIC and a processability determination has not been made." (Filing No. 26-7 at 2.) On April 13, 2015,

15

Ripley issued a Notice of Levy on Cummings' TSP account.  (Filing No. 22 at 6.)  On April 28, 2015, Cummings' OIC was returned.  (Filing No. 22 at 6.)  Shortly after May 13, 2015, $60,000.00 was removed from Cummings' TSP account.  (Filing No. 22 at 6.)

Cummings did not send his OIC to the Brookhaven COIC.  However, Revenue Procedure 2003-71 indicates that the IRS "may, in its discretion, receive offers to compromise in other manners."  Rev. Proc. 2003-71 § 4.04.  The parties' exhibits support the conclusion that the IRS chose not to exercise its discretion to do so in this case, including the Deputy Commissioner's April 9, 2015 statement that "[a]lthough the taxpayer submitted a form 656 to Taxpayer Assistance Service, the form has not been received by COIC and a processability determination has not been made." (Filing No. 26-7 at 2).  In addition, the OIC was returned to Cummings on April 28, 2015.  (Filing No. 26-8.)

Likewise, Cummings acknowledges that he did not send the required application fee and twenty percent initial payment with his OIC application.  The Government argues that the twenty percent payment was statutorily mandated, and because Cummings did not provide it, his OIC could not have been processable, and therefore never could have been pending.  (Filing No. 41 at 28-29.)  The Court notes, however, that while Section 7122 specifies that when a taxpayer makes a lump-sum payment offer, the OIC "*shall* be accompanied by the payment of 20 percent of the amount of such offer," 26 U.S.C. § 7122(c)(1)(A)(i), the statute appears to make discretionary the IRS's decision as to whether a deficient OIC should be returned as non-processable.  26 U.S.C. § 7122(d)(3)(C) (any OIC which does not meet the 20% payment requirement "*may* be returned to the taxpayer as unprocessable" (emphasis added)).  However, as described above, the Deputy Commissioner in this instance elected not to accept the OIC for processing, and it was returned to Cummings.

Therefore, on two occasions before it levied Cummings' TSP account, the IRS indicated that he had not fulfilled the requirements to render his OIC processable, and it was returned to him as non-processable. Based on the applicable regulations, and the facts as alleged by Cummings, his OIC was not accepted for processing, and was therefore never pending.

Cummings contends that the TAO relieved him of his obligation to supply the application fee and the twenty percent payment at the time of his OIC, and therefore that his OIC was accepted for processing when it was received by the Deputy Commissioner. Assuming that the National Taxpayer Advocate possessed the authority to order the IRS to apply "wrongfully" levied proceeds toward the required twenty percent payment (a question which the Court does not reach here), and that such proceeds were sufficient to satisfy the payment requirement, the IRS separately determined pursuant to Cummings' IAR appeal that no funds were wrongfully levied. Therefore, even if the IRS was required to comply with the TAO, the TAO could have done nothing to assist Cummings in complying with the payment requirement. Because Cummings cannot establish that his OIC was "pending" before the IRS, the Court grants the Government's motion for judgment on the pleadings on this claim.

**C.     The Stay in this Matter**

The case management plan in this action set the following deadlines: discovery deadline of October, 1, 2016, dispositive motions deadline of December 1, 2016 and Bench Trial on September 11, 2017. (Filing No. 29.) On August 2, 2016, the Court granted Defendants Motion to Stay Discovery in this matter while the United States' Motion for Judgment on the pleadings was pending. (Filing No. 46.) Unfortunately, the Court nor the parties recognized that a stay of the dispositive motions deadline might also be warranted. The issues surviving judgment on the pleadings, as well as the issue of whether Cummings has suffered any damages, are issues that

might appropriately be resolved on summary judgment. Accordingly, the Court now lifts the stay on discovery and also extends the dispositive motions deadline until April 30, 2017.

## IV.  CONCLUSION

For the reasons described above, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendant's Motion for Judgment on the Pleadings (Filing No. 40). The Court **DENIES** the Government's 12(c) motion as it relates to Cummings' Installment Agreement Request. The Court **GRANTS** the Government's motion as it relates to the Offer in Compromise and those claims are dismissed.  The stay of discovery issued on August 2, 2016 is lifted and the dispositive motions deadline is extended until April 30, 2017.  For now, the trial date of September 11, 2017 shall remain unchanged.

SO ORDERED.

Date:  3/29/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jamie Andree
INDIANA LEGAL SERVICES, INC.
jamie.andree@ilsi.net

Matthew Aaron Hutchens
INDIANA LEGAL SERVICES, INC.
matthew.hutchens@ilsi.net

Jeffrey Nathan Nunez
US DEPARTMENT OF JUSTICE -- TAX DIVISION
jeffrey.n.nunez@usdoj.gov